**RYAN RAPP & UNDERWOOD PLC**

3200 N. Central Avenue, Suite 2250
Phoenix, Arizona 85012
(602) 280-1000 Office; (602) 265-1495 Fax
Christopher T. Rapp, AZ State Bar No. 013374
Email: ctrapp@rrulaw.com
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **United States Of America**, <br> Plaintiff, <br> v. <br> **Andrew Joseph Jemmett**, <br> Defendant. | No. 2:18-cr-01080-DGC-4 <br><br> **DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE** <br><br> *(Assigned to the Hon. David G. Campbell)* |

Defendant Andrew Joseph Jemmett (herein "Mr. Jemmett"), by and through undersigned counsel, hereby submits his Sentencing Memorandum for this Court's consideration for sentencing dated February 13, 2019. Further, Mr. Jemmett hereby moves for a downward departure from his Guideline sentence for the reasons set forth in the following Memorandum of Points and Authorities. Mr. Jemmett requests the Court follow the United States Attorney's Office's recommendation of probation.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    FACTUAL BACKGROUND**.

On August 6, 2018 Mr. Jemmett entered a plea of guilty to False Statement in a Transaction Insured by the Department of Housing and Urban Development, a class E felony. As indicated by the facts detailed at the change of plea hearing, these charges arose from Mr. Jemmett knowingly and willfully making a material false statement for the purpose of influencing the Department of Housing and Urban Development in the release of a mortgage through a short sale, committed on February 10, 2014.

## II. ANALYSIS OF COOPERATION

### A. Significance and Usefulness of Mr. Jemmett's Assistance

Counsel for Mr. Jemmett will defer to the United States Attorney's Office motion under § 5K1.1 of the United States Sentencing Guidelines, regarding the significant information provided and its impact on the pleas obtained and restitution paid by the other defendants.

### B. Truthfulness, Completeness and Reliability of Information and Testimony

Although, Mr. Jemmett was not personally involved in all aspects of the Housing Angels program, he provided valuable testimony and documentation to the United States Attorney's Office and its agents in the areas that Mr. Jemmett worked and had personal knowledge.  Mr. Jemmett started as an hourly administrative assistant and worked his way into a position of trust with David and Heather Dziedzic.  David Dziedzic routinely explained to Mr. Jemmett and other employees that they had verified legal opinions that attested that the loans through straw persons were in strict compliance with the law.  At a point, Mr. Jemmett realized this assurance was false but continued to work and assist in a criminal enterprise.  At lengthy meetings with the investigating agents and prosecutors, Mr. Jemmett revealed how Housing Angels committed acts of fraud and turned over multiple documents which the agents did not have in their possession.

Early in the investigation, the Dziedzics attempted to have Mr. Jemmett remain silent and offered to pay for his defense costs.  However, Mr. Jemmett realized that other employees were in legal jeopardy based on his conduct.  Mr. Jemmett became aware of the damage to those victim families that participated in the program.  He realized that the many families were losing their houses were preyed upon by the Dziedzics.  The testimony and documents provided by Mr. Jemmett allowed the United States Attorney's Office to isolate the fraudulent liens and eventually provide restitution to the victims.

### C. Nature and Extent of Mr. Jemmett's Assistance

Counsel for Mr. Jemmett will defer to the § 5K1.1, United States Sentencing

Guidelines, motion filed by Assistant United States Attorney Gary Restaino, Esq. It is important to note that during Mr. Jemmett's meetings with agents, he was able to demonstrate how Housing Angels principals David and Heather Dziedzic were able to alter bank records to defraud the banks regarding the balances of the participants' (victims') and "strawmen" accounts used to purchase property.

### D.  Danger of Risk of Injury

Although there were no threats Mr. Jemmett faced due to his cooperation, a cooperator is always exposed to some degree of threats and intimidation. The risk of injury to Mr. Jemmett was slight.

### E.  Timeliness of Assistance

Mr. Jemmett's assistance was timely as he cooperated *before* he was under indictment.

## III.  ANALYSIS OF FACTORS PURSUANT TO TITLE 18, U.S.C. § 3553

Under the procedure outlined in *Gall v. United States*, 128 S.Ct. 586, 596-97 (2007), the court must undertake an individualized assessment of the facts of each case in light of the factors delineated in § 3553(a). The Supreme Court, however, recognizes that "[t]he sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the [United States Sentencing] Commission or the appeals court." *Rita v. United States*, 551 U.S. 338, 356 (2007). Accordingly, "while the statute still requires a court to give respectful consideration to the Guidelines, *Booker* permits the court to tailor the sentence in light of other statutory concerns as well." *Kimbrough v. United States*, 128 S.Ct. 558, 569-70 (2007) (citations and quotation omitted).

Section 3553(a) directs the Court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in paragraph two:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective matter.

Section 3553(a) further directs the Court – in determining the particular sentence to impose – to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentences and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a), and must adequately explain the rationale for its sentence. *Gall*, 128 S.Ct. at 597. If the sentencing court, after considering all of these factors, chooses to vary outside the advisory Guideline range, such a variance must be supported by a rationale sufficiently compelling to support the extent of the deviation. *Id.*

As discussed below, Mr. Jemmett respectfully submits that application of the sentencing factors to his conduct, taking into account his cooperation and personal history and characteristics, should result in a term of probation.

### A.   Nature and Circumstances of the Offense

Mr. Jemmett used an entity (Global Financial) to have Housing Angels participants agree to have a voluntary lien of up to $3,000.00 placed on their residential property. The liens were not based on any actual debt owed. Although several banking entities refused to pay those amounts, many of the loans were paid and the funds were split by Mr. Jemmett and Mr. Dziedzic. Mr. Jemmett explained the full process to the agents and prosecutors and has taken full responsibility for his conduct.

### B.   History and Characteristics of Mr. Jemmett

Mr. Jemmett's mother was diagnosed with breast cancer in 2012. She underwent treatment until 2013, when she tragically passed on June 16, 2013, three days after her birthday. Much of the money Mr. Jemmett received from working with Housing

Angels was given to his mother for her cancer treatment and daily care. Mr. Jemmett's mother was receiving in-home hospice care at a dilapidated farm house because she was a proud woman and did not want to go to inpatient living. Mr. Jemmett purchased a house for his mother and fully furnished it so that she could live out her remaining time comfortably. After his mother passed, Mr. Jemmett did sell the house, but at a loss.

The loss of his mother was an emotional turmoil for Mr. Jemmett as she was his only parent. Mr. Jemmett did not know who is father was and only learned of him after Mr. Jemmett's mother died. Unfortunately, Mr. Jemmett's father was already deceased by that time.

Mr. Jemmett and his partner, Rashawn Hart, have been together for approximately 10 years. Mr. Jemmett paid for Mr. Hart's education at Scottsdale Community College and donated to the dance program to which Mr. Hart belonged. When Mr. Hart transferred to a school in Texas, Mr. Jemmett paid for Mr. Hart's living expenses including his housing and furnishings, vehicle and food.

During the time Mr. Jemmett worked with Housing Angels, the company was looking for people who wanted to make extra money. Mr. Hart was asked to be a straw buyer for some of the properties so that he could earn cash while attending school full time. When Mr. Jemmett discovered that David and Heather Dziedzic were under investigation, he resigned from Housing Angels. Mr. Jemmett also learned that Mr. Hart was under investigation for his participation. Mr. Jemmett realized that he placed Mr. Hart in a situation where he could be criminally liable; he was devastated and regretful for involving Mr. Hart, someone whom he loves. Mr. Jemmett agreed to fully cooperate in the investigation because it was the right thing to do and in order to protect Mr. Hart, who was minimally involved and only because of his relationship with Mr. Jemmett.

Mr. Jemmett is a licensed real estate agent in Arizona. Although the plea agreement in this matter does not make Mr. Jemmett surrender his license, he is doing so voluntarily. Mr. Jemmett's plea agreement did call for him to pay $7,280 in restitution. Mr.

Jemmett was going to pay this amount in full at the time of sentencing; however, David Dziedzic paid the restitution on Mr. Jemmett's behalf.

### C. Need for Sentence to Address Additional Title 18, U.S.C. § 3553 Factors

The requested sentence of probation is reasonable upon consideration of the nature and circumstances of the offense, Mr. Jemmett's cooperation and his history and characteristics as discussed above. A felony conviction and probation is required to address the seriousness of Mr. Jemmett's criminal conduct and to have a deterrent value to him and others. Although Mr. Jemmett's record does not suggest that he would reoffend, a felony conviction that will result in severely limiting his ability to work in the financial services industry will protect the general public.

## IV. CONCLUSION

During the period Mr. Jemmett cooperated with the agents and Assistant United States Attorneys assigned to the Housing Angels investigation, he was allowed to maintain his real estate license and work as an agent in the market. His business partners were always aware of his pending legal matters and have provided letters to the Court requesting a lenient sentence.

Mr. Jemmett committed criminal acts but clearly chose to assist the government in obtaining justice for the victims. He is not a criminal risk to reoffend and is remorseful for his participation in the fraud.

The defense seeks a two year probation and requests the Court consider unsupervised probation. Mr. Jemmett has been a law abiding citizen at all times since this investigation commenced and has not had any violations during the period since September 2016.

RESPECTFULLY submitted this 4th day of February, 2019.

**RYAN RAPP & UNDERWOOD, P.L.C.**

/s/     Christopher T. Rapp
Christopher T. Rapp
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 4, 2019, I electronically transmitted the attached document to the clerk's office using the CM/ECF System for filing documents and sent the attached document to the following CM/ECF registrants: Monica Beerling Klapper; Gary Michael Restaino.

/s/      Linda Eaton

